7 So.3d 1282 (2009)
Rebecca C. STRICKLAND, Plaintiff-Appellee,
v.
Mark W. STRICKLAND, Defendant-Appellant.
No. 44,185-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 2009.
Culpepper & Carroll, PLLC by Bobby L. Culpepper, Jonesboro, for Appellant.
Darrell R. Avery, Jonesboro, for Appellee.
*1283 Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
Rebecca Strickland filed a petition for Partition of Community Property against her former husband, Mark Strickland. Mark did not answer the proceedings. A preliminary default judgment was entered and eventually confirmed. After he received notice of the judgment, Mark filed a motion for a new trial. The trial court denied the motion and Mark filed this appeal. We affirm.

Facts
Ten months after obtaining a judgment of divorce, on November 21, 2007, Rebecca Strickland filed a petition for partition of the community property against her former husband, Mark W. Strickland, with an order attached directing the parties to file a sworn descriptive list of the community property within 45 days. Rebecca filed her descriptive list with her petition for partition. Service of citation, the petition and order were attempted on November 27, 2007. The citation was returned unserved. Subsequently Mark was served with the petition, order and citation on December 19, 2007.
Mark did not answer the petition, nor did he file a sworn descriptive list within 45 days pursuant to the order. Approximately 74 days after he was served, Rebecca entered a preliminary default judgment that was subsequently confirmed after a hearing, the transcript of which is in the record. The judgment was signed on March 13, 2008.
After Mark received a copy of the judgment, he obtained an attorney who immediately filed a motion for new trial. The trial court denied the motion and plaintiff filed this appeal.
The sole assignment of error is that the trial court erred as a matter of law in denying the motion for a new trial.

Discussion
Mark alleges on appeal that the trial court failed to follow the procedures set forth in La. R.S. 9:2801 in partitioning the community property. Specifically, he complains that the court failed to equally divide the assets as required by La. R.S. 9:2801(A)(4)(b), largely because some of the assets were not assigned any value.
La. R.S. 9:2801 sets forth mandatory procedural rules for a partition of the community property when the partition is instituted as incident to the divorce proceeding:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules: (1)(a) Within forty-five days of service of a motion by either party, each party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities. For good cause shown, the court may extend the time period for filing a detailed descriptive list. If a party fails to file a sworn detailed descriptive list timely, the other party may file a rule to show cause why its sworn detailed descriptive list should not be deemed to constitute a judicial determination of the community assets and liabilities. At the hearing of the *1284 rule to show cause, the court may either grant the request or, for good cause shown, extend the time period for filing a sworn detailed descriptive list. If the court grants the request, no traversal shall be allowed.
(b) Each party shall affirm under oath that the detailed descriptive list filed by that party contains all of the community assets and liabilities then known to that party. Amendments to the descriptive lists shall be permitted. No inventory shall be required.
(2) Within sixty days of the date of service of the last filed detailed descriptive list, each party shall either traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. For good cause shown, the court may extend the time period for a party to traverse or concur in the detailed descriptive list of the other party. The trial of the traverses may be by summary procedure. At the trial of the traverses, the court shall determine the community assets and liabilities; the valuation of assets shall be determined at the trial on the merits. The court, in its discretion, may by ordinary procedure try and determine at one hearing all issues, including those raised in the traverses.
In our view, as anticipated by Rebecca's counsel, the core issue in this case is really a question of whether Mark was afforded due process when Rebecca obtained a judgment of partition by confirming a default judgment rather than raising the issue by filing a rule to show cause. Thus, the issue is whether the trial court erred in allowing the suit to partition the community property to be taken up as a confirmation of a judgment by default rather than by rule to show cause. There is some jurisprudence on this issue.
In Joseph v. Joseph, 619 So.2d 181 (La. App. 3 Cir. 6/2/93), a year after obtaining a divorce, the plaintiff filed an action to partition the community property and the defendant was served. The plaintiff's petition for partition of the community property included a prayer requesting that the trial court order the defendant to file a sworn detailed descriptive list. The trial court ordered the defendant to file his detailed descriptive list and to either traverse or concur in the detailed descriptive list filed by the plaintiff within 15 days from the date of service. The defendant was served on December 10, 1990, and failed to answer the petition. On September 16, 1991, a preliminary default was entered on the suit to partition the community property, and thereafter confirmed October 16, 1991. Counsel for the defendant filed a motion for new trial which was denied.
On appeal, the defendant argued that he was entitled to receive notice of opposing counsel's intent to obtain a default judgment. More specifically, he alleged that the trial court erred in allowing the suit to partition the community property to be taken up as a confirmation of a judgment by default.
The third circuit held that the preliminary default and confirmation were proper since Mr. Joseph did not answer the suit for partition and the court had ordered the defendant to file his detailed descriptive list and to either traverse or concur in the descriptive list filed by the plaintiff. Joseph, supra at 183. See also, Palombo v. Palombo, 94-95 (La.App. 3 Cir. 10/5/94), 643 So.2d 445.
By contrast, the first circuit, in Bible v. Bible, 2003-2793 (La. App 1 Cir. 9/17/04), 895 So.2d 547, affirmed a judgment of nullity in favor of the divorced husband following a judgment confirming a preliminary default against him in his former *1285 wife's action to partition community property. Ms. Bible filed a petition for community property partition with an attached sworn descriptive list. Mr. Bible failed to answer the petition and Ms. Bible subsequently entered a preliminary default judgment that was subsequently confirmed. Thereafter, Mr. Bible filed a motion for nullity alleging that the judgment was improperly obtained in that the procedure set forth in La. R.S. 9:2801 was not followed. The trial court granted the motion, and Ms. Bible appealed.
Affirming the judgment, the appellate court held that "the provisions of La. R.S. 9:2801 are mandatory." Bible v. Bible, supra at 550; (citations omitted). The court distinguished the facts of the case from Joseph v. Joseph, supra, and Palombo v. Palombo, supra, where, in both cases, the petitions contained a prayer for an order directing the defendant to file a sworn descriptive list, thereby conforming to the requirements of R.S. 9:2801 to file a motion for a descriptive list. Ms. Bible's petition contained no such prayer and no order was issued.
In this instance, the record shows that when Mark was served with the petition for partition and order to file a descriptive list, he received service of citation indicating that he would be subject to a default judgment if he failed to answer the petition within 15 days. La. C.C.P. art. 1201 and 1202(5). (See Comment to La. C.C.P. art. 1201 that a claim for partition incidental to divorce action requires service of citation.)
Unlike Bible v. Bible, supra, Rebecca's petition contains a prayer for an order directing the parties to file a sworn descriptive list within the delays allowed by the order, and after trial, that there be a judgment ordering the partition. The facts of the case are thus analogous to those in Joseph v. Joseph, supra.
Rebecca contends that La. R.S. 9:2801(A)(2) permits her to obtain a default judgment by ordinary proceedings. The statute gives either party 60 days from the date of the last filed descriptive list to traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. The traverses may be done by summary procedure, but the valuations must be determined by trial on the merits. At its discretion, the court may by ordinary procedure try and determine at one hearing all issues, including those raised in the traverses. Thus, Rebecca contends, obtaining the default judgment by ordinary procedure was appropriate.
We agree. Discussing the impact of La. R.S. 9:2801 on the procedure to be followed in a partition of community property in Washington v. Washington, 493 So.2d 1227 (La.App. 2 Cir.1986), this court stated that "the statute contemplates that the partition process for community property be initiated by petition, and, if desired (emphasis ours), supplemented by summary proceedings for trial of the traverses of the detailed descriptive list." Id. at 1231-32.[1] In its current form, the statute provides that, in addition to a trial of the traverses, a party may invoke summary proceedings if a party fails to file a descriptive list. In this instance, Rebecca initiated the partition by petition and direct reference to La. R.S. 9:2801 and a prayer for an order pursuant to the statute. Mark failed to answer the petition *1286 and order. Rebecca could have invoked a summary proceeding by filing a rule to show cause why her descriptive list should not be deemed to constitute a judicial determination of the community assets and liabilities. Instead, she chose to proceed by taking a default judgment under La. C.C.P. art. 1701, and submitting the evidence required to obtain a confirmation of the default judgment under La. C.C.P. art. 1702. The court thus established the valuations and completed the partition by ordinary proceeding, i.e., by taking the matter up as a confirmation of default matter.
We conclude, therefore, that the trial court did not err in taking up the partition by confirmation of default judgment and rendering a judgment of partition based on the evidence adduced.
Defendant complains, however, that the court failed to follow the procedure outlined in La. R.S. 9:2801 because some items in his possession were not assessed any value, and, in other instances, he challenges the division of the assets or the items on Rebecca's descriptive list. He contends, therefore, that the court did not follow the mandate of the statute to "value the assets" at the trial on the merits and to "divide the community assets and liabilities so that each spouse receives property of an equal net value." La. R.S. 9:2801(A)(3)(a)(b).
After our review of the confirmation transcript and the descriptive list submitted by Rebecca which the trial court determined to constitute the community assets and liabilities, we conclude that Mark's claims have no merit.
First, regarding the items in which "no value" was assigned, we observe that Mark is in possession of these items which were allocated to him in the judgment of partition. Mark was given ample opportunity to submit a descriptive list and show, if possible, that the debt on the 2001 Dodge Dakota exceeds its value. He did not do so, nor does he make this claim on appeal.
Mark's complaint that he is getting assessed for one-half of a new air conditioning unit entirely to the benefit of the plaintiff is also without merit. The debt was incurred during the community regime, and the fact that Rebecca obtained the house in the partition is of no moment.
Finally, regarding the other minor liabilities in the judgment of partition of which Mark now complains, we will not allow Mark to, in effect, traverse the descriptive list on appeal, when he failed to take such action in proceedings before the trial court. To do so now would be to reward him for his earlier inaction and would unfairly penalize Rebecca.

Conclusion
For these reasons, the judgment of the trial court denying the defendant's motion for a new trial is affirmed.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent from the majority's view that this community property partition action under La. R.S. 9:2801 (hereinafter the "Statute") appropriately shifted in midcourse from a summary action to an ordinary proceeding with due process afforded Mark Strickland.
There are three distinct modes of procedure used in Louisiana civil matters: ordinary, summary, and executory. La. C.C.P. art. 851. Summary proceedings are those which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings. La. C.C.P. art. 2591. Code of Civil Procedure Article 2592 provides a *1287 listing of specific summary actions, but also recognizes that there can be "other matters in which the law permits summary proceedings to be used," which are not enumerated in the article. La. C.C.P. art. 2592(12); see also, Official Revision Comments (b) to Article 2592 (1960). The legislative intent for the mode of procedure for a given statutory action must be determined. Id.
While the Statute makes a reference at one point to a discretionary trial by ordinary procedure, all indications in the Statute before that reference are for summary proceedings. The Statute states that the partition action may be conducted as an incidental matter to the parties' divorce proceeding, which itself is conducted through special summary proceedings. See, La. C.C. arts. 102 and 103, and La. C.C.P. arts. 3941, et seq. The principal procedure initially set forth under the Statute is for the parties' identification and evaluation of all community assets and liabilities in a summary manner. Three outcomes can occur during this phase. The parties' sworn detailed descriptive lists can be in agreement. If not in agreement, the parties traverse the inventory for any asset or liability or its value in a "trial of the traverses." The third possibility involves the failure of a party to timely file a sworn detailed descriptive list, so that the other party's list, after a "rule to show cause" (as opposed to a traversal hearing), is "deemed to constitute" the community assets and liabilities by default. La. R.S. 9:2801(A)(1)(a).
Finally, there is one last phase of the special community partition action that is not addressed under the Statute with specific procedural detail, but is implicit for the trial court's ultimate judgment. After the assets and liabilities and their values have been decided through the initial proceedings, the trial court must make "an allocation of assets and liabilities to the parties." This allocation phase certainly can involve contentious claims between the parties. The Statute identifies some of the causes for contention in this final phase of the proceeding: "the allocation of an asset, in whole or in part, would be inequitable to a party;" a choice between drawing lots, private sales, or licitation sales may be necessary; or the determination for "an equalizing sum of money, either cash or deferred, secured or unsecured" may be required. The Statute suggests the possibility that the trial court can make the allocation/partition in this final phase of the action without further hearings after the initial identification and valuation proceedings. Nevertheless, unless the community is composed of few assets that are easily divisible, the expected procedure in this final phase would require a party or both parties to move for the allocation/partition, proposing to the court the party's suggested division of assets and liabilities and any equalizing payment. In keeping with the allowance for summary proceedings throughout the identification and valuation phase, any final dispute over the parties' conflicting allocations for assets and liabilities can be tried by a rule to show cause.
Two other observations regarding the Statute. The speed of summary proceedings to divide the community and allow the parties to move on with their economic lives is an obviously beneficial policy. The unusual allowance for a shift to ordinary procedure contained in the final sentence of Subpart (A)(2) of the Statute is for the trial court to choose and direct in its discretion, not the choice for one of the litigants. Arguably, such change in procedure may narrowly apply in the situation where both parties have made appearances in the action, and the trial court elects a pretrial procedure in keeping with ordinary proceedings, both to afford the parties *1288 time to develop evidence and to frame for trial the issues surrounding numerous properties and liabilities of an economically complex former community.
Clearly, this action began as a summary procedure. Rebecca's petition made no allegations identifying assets, liabilities, any claim for a reimbursement debt owed her, or any proposed allocation of property. The petition simply sought a court order, and Mark was directed upon issuance of that specific order to act within 45 days by filing a sworn descriptive list "of all property comprising the former community." The general citation language in the service document accompanying the petition directed Mark to answer within 15 days under penalty of default, and therefore was not in harmony with the specific 45-day order he received. No prayer for a money judgment against Mark appeared in Rebecca's petition. While Rebecca's sworn descriptive list did detail reimbursement claims for community debts she paid, it is not clear from the record that this descriptive list was served on Mark.
An important principle of notice to the defendant in the default setting of the ordinary action is that "a judgment of default shall not be different in kind from that demanded in the petition." La. C.C.P. art. 1703. A defendant has a due process right to know what is at stake when a default is threatened. Spear v. Tran, 96-1490 (La.App. 4th Cir.9/18/96), 682 So.2d 267, 271, writ denied, 96-3024 (La.2/7/97), 688 So.2d 500. Mark did not receive such notice in this proceeding alerting him to the possibility for the $10,140.05 money judgment that was ultimately rendered against him by default for Rebecca's reimbursement claim never mentioned in her petition.
The Statute did provide Rebecca with an opportunity for defaulting Mark based on his inaction. "If a party fails to file a sworn detailed descriptive list timely, the other party may file a rule to show cause why its sworn detailed descriptive list should not be deemed to constitute a judicial determination of the community assets and liabilities." La. R.S. 9:2801(A)(1)(a). Rebecca did not follow that procedure and serve such rule to show cause on Mark. A rule to show cause, coupled with a motion to adjudicate Rebecca's proposed allocation of the community and equalizing payment for reimbursement claims, would have given Mark proper notice of the judgment rendered against him. In the absence of that procedure and that notice, the judgment should be reversed.
NOTES
[1] When Washington was decided, La. R.S. 9:2801 provided that "the trial of the traverses may be by summary procedure," as does the current statute. There was no provision in the statute permitting a party to invoke summary procedure in the event a party failed to file a descriptive list.